Bruce Hadley – In Pro Per
Curtis Randolph
1501 E Avenue I
Lancaster, CA 93535
(661) 486-2132

In Pro Per

**S/N/I**

**FILED**
CLERK, U.S. DISTRICT COURT

**JULY 26 2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**2:23-CV-06091-MCS-PDx**

BRUCE HADLEY, CURTIS RANDOLPH;

      Plaintiffs.

  VS.

TROPICANA MANUFACTURING
COMPANY, INC. a Delaware corporation;
PEPSICO., INC., a North Carolina
corporation,

      Defendants.

**Case No.:**

Plaintiffs, BRUCE HADLEY, an individual, and CURTIS RANDOLPH, individual (herein after "Plaintiff" or "Plaintiffs"), hereby brings this Action against Defendants Tropicana Manufacturing Company, Inc. and PepsiCo., Inc. ("Defendants" or "Tropicana"), alleging that Defendants' Tropicana Pure Premium 100% Orange Juice with Calcium & Vitamin D Product (the "Product") is misbranded and falsely advertised

and otherwise violates consumer protection laws, and upon information and belief and investigation alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under those similarly situated Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants are citizens of different states from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2. This Court has both general and specific personal jurisdiction over the Defendants because Defendants have conducted and continue to conduct substantial business in the State of California and in the County of Los Angeles. Plaintiff purchased the Product in the County of Los Angeles.

3. This Court has specific personal jurisdiction arising from Defendants' decision to advertise and sell the Product in California. Defendants have sufficient minimum contacts with this State and sufficiently avail themselves to the markets of this State through their manufacture, promotion, sales, and marketing of the Product to consumers within the State to render the exercise of jurisdiction by this Court reasonable.

4. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendants has marketed

and sold the Product at issue in this action within this judicial district, and they conduct business within this judicial district. Plaintiff also purchased the Product within this District.

## II.   INTRADISTRICT ASSIGNMENT

4.   Intradistrict assignment in Los Angeles, California, is proper because the unlawful conduct that gives rise to the alleged claims occurred in Los Angeles County. The Court has jurisdiction pursuant to *28 U.S.C.* section 1367 of the claims asserted by Plaintiffs' under the laws of California.

## III.   REQUEST FOR JUDICIAL NOTICE

5.   Plaintiffs request this Honorable Court to take judicial notice under the Federal Rules of Civil Procedure Rule 201(d) of the following:

a.   The United States Supreme Court, in Haines v. Kerner 404 U.S. 519 (1972), determined that all litigants defending themselves must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than the form.

b.   Conley v. Gibson, 355 U.S. 41, 45-46 (1957) , Montanye v. Haymes 427 U.S. 236.   Where the Supreme Court said, "It was improper for the District Court either to dismiss the complaint or to grant summary judgment for the Defendants without a trial of the facts, Quoting Haines v. Kerner, Supra.  Conley v. Gibson, 355 U.S.

c.  In Platsky v. CIA, 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed that the District Court should have explained to the litigant proceeding without a lawyer, that the correct form to the plaintiff so that he could have amended his pleading accordingly, Plaintiff respectfully reserve the right to amend this complaint.

## IV.  **PARTIES**

6.   Plaintiff BRUCE HADLEY is an individual consumer over the age of eighteen who resides in Lancaster, California.

7.   Plaintiff CURTIS RANDOLPH is an individual consumer over the age of eighteen who resides in Lancaster, California.

8.   Defendant Tropicana Manufacturing Company, Inc. is a Delaware corporation that manufactures the Product. Plaintiff is informed and believes that Defendant Tropicana Manufacturing Company, Inc. maintains its principal place of business in Bradenton, Florida.  Defendant Tropicana Manufacturing Company, Inc. is registered to do business in the state of California as entity number C2326121.

9.   Defendant PepsiCo., Inc. is a North Carolina corporation and is the parent company of Defendant Tropicana Manufacturing Company, Inc. Plaintiff is informed and believes that Defendant PepsiCo., Inc. maintains its principal place of business in

Purchase, New York. Defendant PepsiCo., Inc. is registered to do business in the state of California as entity number C1577264.

10. Defendants manufacture, advertise, market, distribute, and sell the Product in California.

## FACTS

11. The following is based on personal knowledge:

### A. Defendant's Product Is Misbranded

12. Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If anyone representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-OPathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).

13. Under the FDCA, it is not necessary to prove that anyone was actually misled. Consumer protection laws of the fifty states and the District of Columbia have substantially identical requirements as the FDCA. 42. Defendant's packaging and advertising of the Product violate various state laws against misbranding. For example,

California law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. 43.

14. Defendant's Product is misbranded under California consumer protection laws and food regulations because they have misled Plaintiffs and Those similarly situated about the volume of the Product in comparison to the size of the Product's packaging.

15. The size of the containers in relation to the actual amount of the Product contained therein gives the false impression that the consumer is buying more than they are actually receiving.

16. Plaintiffs and Those similarly situated were exposed to Defendant's deceptive Product packaging and Those similarly situated continue to be exposed to these false and misleading misrepresentations.

17. There is no practical reason for the non-functional slack-fill used to package the Product other than to mislead consumers as to the actual volume of the Product being purchased by consumers.

18. Tropicana Manufacturing Company, Inc. ("defendant") manufactures, markets, labels and sells Tropicana Pure Premium 100% Orange Juice brand in containers of 52 Fl ounces (1.6 QT) 1.53L, which claims to provide "6 Servings" per container, Serving Size 8 fl oz (240 mL). However, this representation is false, deceptive and misleading. As the nutritional value is based upon 1.6 QT or 1.53 liters per container which is falsely represented.

19. Though the Product claims to have "6 Servings" based on a serving size of 8 fl oz, 1.6 qts or 1.53 liters, is inaccurate and incorrect in that 1 liter is 0.946353, based upon 1.6 qt which can only total 1.5 liters and not 1.53 liters, with a cup equaling 8 oz.

20. Defendant's Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Product. Defendant's misrepresentations are part of its systematic Product packaging practice. Plaintiffs were Injured as a Result of Defendant's Misleading and Deceptive Conduct

21. In reliance on Defendant's deception, consumers – Plaintiffs and those situated in a similar state – have purchased a Product that is misbranded.

22. The misbranded Product cannot be legally manufactured, advertised, distributed, held or sold in the United States with false information.

23. At the point of sale, Plaintiffs did not know, and had no reason to know, that the Product was packaged misleadingly as set forth herein.

24. Plaintiffs, and those similarly situated, would not have bought the Product had they known it was misbranded and illegal to sell or possess.

25. Defendant's Product packaging was a material factor in Plaintiffs' and Those similarly situated' decisions to purchase the Product. In reliance on Defendant's Product packaging, Plaintiffs and Those similarly situated believed that they were getting more of the Product than was actually being sold. Had Plaintiffs and Those similarly situated

known that exclusive of functional headspace, Defendant's Product contained significant non-functional slack-fill, they would not have bought the Product.

26. Plaintiffs and Those similarly situated paid the full price of the Product and received less of what Defendant represented they would be getting due to the non-functional slack-fill in the Product. In order for Plaintiffs and Those similarly situated to be made whole, Plaintiffs and Those similarly situated would have to receive enough of the sugar-free gum so that there is no non-functional slack-fill or have paid less for the Product. In the alternative, Plaintiffs and members of those similarly situated

27. Defendants manufacture, distribute, advertise, market, and sell the Tropicana Pure Premium 100% Orange Juice with Calcium & Vitamin D Product (the "Product").

28. The Product is labeled as if its flavored exclusively with natural ingredients. For example, the Product shows a photo of an orange with a straw in it and says, "100% Orange Juice" and "Pure Premium."

29. Defendants intended to give reasonable consumers, like Plaintiffs Hadley and Randolph, the impression that the Product was all-natural by packaging, labeling, and advertising he Product in a manner that suggests the Product is all-natural. However, the Product contains d-l-malic acid, which is an undisclosed artificial flavoring ingredient.

30. A true and correct copy of the Product's front label is provided below:

Defendants Do Not Disclose that the Product is Artificially Flavored

31. The ingredients label on the Product states, "100% Pure pasteurized orange juice, calcium hydroxide, citric acid, malic acid, and vitamin D3." (emphasis added)

32. The "malic acid" listed in the Product's ingredient list is an artificial flavor.

33. Defendant failed to include the legally required "artificially flavored" disclosure on the Product's labels.

34. Under these circumstances, the Product's labels violate California and federal statutes and state common law in multiple respects.

35. First, because the Product contains additional flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than misleadingly suggest that the product is naturally flavored. (California Health & Safety Code § 109875 et seq., (Sherman Law), incorporating 21 C.F.R. § 101.22.).

36. Second, the Product's ingredients list violates federal and state law because identifies, misleadingly, the d-l-malic acid flavoring only as the general "malic acid" instead of using the specific, non-generic name of the ingredient. (See 21 C.F.R. §101.4(a)(1)).

37. Lastly, the Defendants conceal the true nature of the Product. Defendants labeled the Product in a manner that suggests it is made with only natural flavors even though the Product contains d-l-malic acid – an undisclosed artificial flavor made from petrochemicals.

38. There is a compound found in nature that is sometimes referred to informally as malic acid.

39. The natural form of malic acid is correctly and specifically identified as "lmalic acid." L-malic acid occurs naturally in various types of fruits and vegetables.

40. That, however, is not the compound that Defendants put in the Product. Instead, Defendants flavor the Product with a synthetic industrial chemical called d-1 malic acid, in the form of a racemic mixture of d- and 1-isomers. This type of "malic acid" is not naturally-occurring but is manufactured in petrochemical plants from benzene or butane – components of gasoline and lighter fluid, respectively – through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

41. Testing of the Product that was conducted on May 8, 2019 confirms the presence of artificial d-l malic acid.

42. The "d-l-malic acid" used by Defendants is an inexpensive synthetic chemical used in processed food products to make a tangy or tart taste, like one would expect from fresh fruits like oranges.

43. Both the natural and unnatural forms of malic acid are considered "GRAS" (generally recognized as safe) for use as flavorings in foods marketed to adults

44. Although the malic acid that is placed in the Product to simulate its 4 characterizing fruit flavor is d-l-malic acid – the artificial petrochemical – Defendants

pretend otherwise, conflating the natural and artificial flavorings and deceiving consumers.

45. Because the Product contains an artificial flavor, both federal and state law require the Product's front and back label to state the Product contains artificial flavoring. (21 C.F.R. § 101.22.)

46. Neither the Product's front-label nor its back-label contains disclosures. Defendants intentionally designed the Product's labels without the required "Artificial Flavoring" disclosures to deceiving consumers into believing that the Product contains no artificial ingredients, artificial flavoring agents or artificial chemicals.  It is currently unknown whether the Product is also contaminated with precursor chemicals used in the manufacture of d-1 malic acid.

47. California law, incorporating and identically mirroring U.S. Food, Drug and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors.  (21 C.F.R. § 102.5(a).)

48. Under FDA regulations, a recognizable primary flavor identified on the front label of a food product is referred to as a "characterizing flavor."  (21 C.F.R. § 101.22.)

49. FDA regulations and California law establish that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavors by word, vignette, e.g., description of a fruit, or other

means" then "such flavor shall be considered the characterizing flavor." (California's Sherman Law, incorporating 21 C.F.R. § 101.22(i).)

50. "Orange Juice" is a primary recognizable flavor identified on the Product's front label. Orange Juice is a characterizing flavors under California and federal regulations.

51. If a product's characterizing flavor is not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both of natural or artificial flavorings. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." (California's Sherman Law, incorporating 21 C.F.R. § 101.22(i)(3), (4).) 34. A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) … when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance … and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." (California's Sherman Law, incorporating 21 C.F.R. § 102.5(c).) Such statements must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. (Id.)

52. The synthetic d-l malic acid in the Product simulates, resembles, and reinforces the characterizing orange juice flavor for the Product.

53. For example, the Product contains pure pasteurized orange juice, but it also contains d-l-malic acid, a synthetic flavoring material used to create, simulate, or reinforce the characterizing orange juice flavor.

54. Under these regulations, Defendants were required to place prominently on the Product's front labels a notice sufficient enough to allow reasonable consumers to understand that the Product contained artificial flavorings.

55. Defendants failed to do so, deceiving consumers and violating California law, federal law, and corresponding state common laws.

56. Accordingly, Plaintiff and those similarly situated were unaware that the Product contained artificial flavors when they purchased them.

57. When purchasing the Product, Plaintiff and those similarly situated were seeking products of particular qualities that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

58. California's Health & Safety Code states that "[a]ny food is misbranded if it is bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labelling states that fact." (California Health & Safety Code, § 110740.)

59. California law requires Defendants to include sufficient notice on the Product's labels to alert California consumers that the Product is artificially flavored.

60. Defendants failed to do so. Accordingly, Defendants' Product is misbranded and illegal to distribute or sell in California.  (California Health & Safety Code, §§ 110740, 110760, 110765.)

61. Because the Product violated California law, it was misbranded when offered for sale in California.

62. Defendants were aware that consumers, like Plaintiffs and those similarly situated, prefer natural products to those that are artificially flavored.

63. Defendants deceived Plaintiff and those similarly situated into purchasing the Product by unlawfully concealing that it was artificially flavored.

64. Plaintiff and those similarly situated lost money as a result of Defendants' conduct because they would not have purchased the Product or would not have paid as much as they have in the absence of Defendants' misrepresentations and omissions.

**B. Plaintiff's Purchase of the Product**

65. Plaintiffs Hadley and Randolph purchased the Product in June 2023 at the Vallarta Supermarket located West Avenue I, Lancaster, CA 93535.

66. Plaintiffs Hadley and Randolph were deceived by, and justifiably relied upon, the Product's deceptive labeling, which claimed it was "Pure Premium," and "100% Orange Juice, and that it's nutrition value based on 6-7 full cup servings"

67. Plaintiffs Hadley and Randolph, like any reasonable consumer, believed that if a beverage states it is "premium" and 100% Orange Juice, then the beverage is not made

with artificially ingredients. Hadley and Randolph's belief was reaffirmed by Defendants' omission that the Product contains artificial flavoring.

68. Plaintiffs Hadley and Randolph, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the labels on the back of products to discover that its front label is false and misleading, or to search the labels for information that federal regulations require be displayed prominently on the front – and, in fact, under state law are entitled to rely on statements that Defendants deliberately place on the Product's labeling. Defendants, but not Plaintiff, knew or should have known that this labeling was in violation of federal regulations and state law.

69. Because Plaintiff reasonably assumed the Product was free of artificial flavoring, based on the Product's labels, when it was not, she did not receive the benefit of their purchase. Instead of receiving the benefit of a product free of artificial flavoring, Plaintiff received the Product that was unlawfully labeled to deceive consumers into believing that they were naturally flavored and contained no artificial flavoring, in violation of federal and state labeling regulations.

70. Plaintiff would not have purchased the Product in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated California law, Plaintiff would not have been injured.

71. The Product was worth less than what Plaintiff paid for, and those similarly situated would not have paid as much as they had for the product absent Defendants' false and misleading statements and omissions.

72. Plaintiff and those similarly situated therefore lost money as a result of Defendants' unlawful behavior. Plaintiff and those similarly situated altered their position to their detriment and suffered a loss in an amount equal to the amounts they paid for the Product.

73. Plaintiff intends to, seeks to, and will purchase the Product again when they can do so with the assurance that the Product's labels, which indicate that the Product is naturally flavored, are lawful and consistent with the Product's ingredients.

**I.**
**Breaches of Express Warranty,**
**Implied Warranty of Merchantability and**
**Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.**

74. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and those similarly situated that it could provide the number of servings promised on the label.

75. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

76. This duty is based on Defendant's outsized role in the market for this type of Product.

77. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

78. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

79. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

80. Plaintiff and those similarly situated would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## II.
### Negligent Misrepresentation

81. Defendant had a duty to truthfully represent the Product, which it breached.

81. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

83. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

84. Plaintiff and those similarly situated reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

85. Plaintiff and those similarly situated would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## III.
## Fraud

86. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could provide the number of servings promised on the label.

87. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## IV.
## Unjust Enrichment

88. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and those similarly situated, who seek restitution and disgorgement of inequitably obtained profits.

## V.
## CALIFORNIA STATE UNFAIR COMPETITION LAW (UCL)
## Cal. Bus. & Prof. Code §§ 17200, et seq.
## (Plaintiffs Hadley and Randolph, on behalf of California Sub-Class)

89. Plaintiffs Hadley and Randolph re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

90. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.  Section

17200 specifically prohibits any "unlawful … business act or practice."

91. Defendant's practices as described herein were at all times during those similarly situated Period and continue to be unlawful under, inter alia, FDA regulations and California's Sherman Law.

92. The UCL "unlawful prong" borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

93. Defendants' practices as described herein were at all times during those similarly situated Period and continue to be unlawful under, inter alia, California's Sherman Law as it incorporates U.S. FDA regulations as well as specific California food labeling regulations including Cal. Health & Saf. Code § 114089. 133. Among other violations, Defendants' conduct in unlawfully packaging and distributing the Products in commerce in California violated Sherman Law packaging and labeling regulations.

94. The Products' labels fail to disclose that each contains a synthetic artificial flavoring in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

95. The Products contain dl-malic acid.

96. The dl-malic acid is a flavoring material; it is included in the Products to create, simulate and reinforce the characterizing fruit flavors.

97. The dl-malic acid in the Products is derived from petrochemicals, not from a natural material as defined in 21 C.F.R. § 101.22, and is therefore by law an artificial flavor.

98. Defendants fail to inform consumers of the presence of the artificial flavor in the Product, on either the front-of-package or back labels as required by law.

99. Defendant's practices are therefore unlawful as defined in Section 17200 of the California Civil Code.

100. Defendants' practices as described herein were at all times during those similarly situated Period also "unfair" under California's UCL.

101. Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

102. While Defendant's decision to label the Products deceptively and in violation of California law may have some utility to Defendant in that it allows Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

103. Defendant's conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unfair and unethical behavior.

104. Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

105. Plaintiffs' purchases and all California Sub-Those similarly situated' purchases of the Products took place in California.

106. Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

107. Defendant failed to properly disclose material facts to Plaintiffs and those similarly situated in Defendant's advertising and marketing of the Products.

108. Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include: A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

109. Defendant's conduct is also "unconscionable" because it violates, inter alia, 21 C.F.R. § 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label. 150.

Defendant intended that Plaintiffs and those similarly situated rely on Defendant's acts and omissions in misbranding and falsely labeling the Products to induce them to purchase the Products and to pay more for the Products than they otherwise would have, and Plaintiffs and the those similarly situated actually did rely on those acts and omissions.

110. Had Defendant properly and conspicuously disclosed all material information regarding the Products, Plaintiffs and those similarly situated would not have purchased the Products or would only have been willing to pay less for the Products than they did.

111. The acts, omissions, and practices of Defendant detailed herein proximately caused Plaintiffs and other members of those similarly situated to suffer an ascertainable loss in the form of, inter alia, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

112. Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

113. Pursuant to California Business & Professions Code § 17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and

fraudulent business practices and requiring Defendant to return to those similarly situated the amount of money improperly collected.

114. Defendant's conduct therefore violated California's consumer protection laws and Defendant is liable to each California Sub-Those similarly situated who purchased any of the Products in California during those similarly situated period.

## VI.
## FRAUD BY OMISSION
### Cal. Civ. Code §§ 1709-1710,
### and similar state statute & common law
### (Plaintiffs, on behalf of those similarly situated)

115. Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

116. An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud.

117. Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710, et seq, and all similar state statutory and common law providing for a cause of action sounding in fraud by omission.

118. Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of those similarly situated to purchase the Product. Specifically, Defendant actively concealed the fact that the Products contain artificial flavoring ingredients.

119. Plaintiffs and those similarly situated were unaware of these omitted material facts, acted in reliance on the omissions, and would not have purchased the Products or would have paid less for the Products if they had known of the concealed facts.

120. Plaintiffs and those similarly situated suffered injuries that were proximately caused by Defendant's active concealments and omissions of material facts.

121. Defendant's fraudulent concealments and omissions were a substantial factor in causing the harm because Plaintiffs and those similarly situated would not have purchased the Products or would have paid less for the Products if all material facts were properly disclosed.

## VII.
## FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, et seq.
(Plaintiffs Hadley and Randolph, on behalf of the California Sub-Class)

122. Plaintiffs Hadley and Randolph re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

123. Defendant advertised, marketed, and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state food labeling regulations.

124. The Products' labeling and advertising presents the Products as if they were solely naturally flavored by the natural fruit(s) shown on the labels.

125. Under California's False Advertising Law, Business and Professions Code § 17500 et seq., "It is unlawful for any person, firm, corporation or association, or any

employee thereof with intent directly or indirectly to dispose of real or personal property . . .  to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500. 168. Defendant's labeling and advertising statements on the Products' labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

126. Defendant's labeling and advertising statements, which communicated to consumers that the Products contain the identified natural fruit(s) and concealed the fact that they contain synthetic artificial flavor, were untrue and misleading, and Defendant at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

127. Plaintiffs and those similarly situated were injured when they purchased Products in reliance on Defendant's false advertising that they otherwise would not have, or paid more for the Products than they would have in the absence of that false advertising.

128. Defendant's conduct violated California's False Advertising Law.

## VIII.
## NEGLIGENT MISREPRESENTATION
### Cal. Civ. Code §§ 1709-1710;
### and similar states' statute & common law
### (Plaintiffs, on behalf of those similarly situated and Sub-Classes)

129. Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

130. Plaintiffs bring this claim for negligent misrepresentation pursuant to California law, California Civil Code §§ 1709-1710, et seq, and similar states' statutes.

131. Negligent misrepresentation allows a plaintiff to recover economic loss resulting from his or her reliance on a false statement made by a defendant who acted unreasonably in not ascertaining the truth.

132. Defendant either acted deliberately or failed to use reasonable care in ascertaining the facts regarding the presence of artificial flavor in the Products.

133. Defendant had a duty to ascertain and disclose to Plaintiff and Those similarly situated the existence of artificial flavoring ingredients in the Products.

134. Defendant was in a superior position to Plaintiff and the Those similarly situated to ascertain this fact such that reliance by Plaintiff and those similarly situated was justified.

135. Defendant possessed the skills and expertise to know both this fact and to know that this information would influence consumers' purchasing decisions.

136. During the applicable Class period, Defendant negligently misrepresented, omitted, and concealed from consumers' material facts regarding the Products, including the presence in the Products of artificial flavoring ingredients.

137. Defendant was careless in ascertaining the truth of its representations.

138. Plaintiffs and those similarly situated were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

139. Plaintiffs and those similarly situated would not have purchased the Products, or would have paid less for the Products, if they had known the true facts.

## IX.
## VIOLATIONS OF THE CALIFORNIA
## CONSUMERS LEGAL REMEDIES ACT
## Cal. Civ. Code §§ 1750, et seq.
### (by Plaintiffs Hadley and Randolph on behalf of the California Sub-Class)

140. Plaintiff re-alleges and incorporates herein by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

141. The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

142. Plaintiffs Hadley and Randolph and the California Sub-Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

143. The Product is a "good" as defined by Cal. Civ. Code § 1761.

144. Defendant's failure to label the Products in compliance with federal and state labeling regulations was an unfair, deceptive, unlawful, and unconscionable commercial practice.

145. Defendant' conduct violates the CLRA, including but not limited to, the following provisions:

146. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

147. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

148. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

149. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

150. As a result of Defendant's violations, Plaintiffs Hadley and Randolph and the California Sub-Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had the Products been labeled truthfully, and in the form of the reduced value of the Products purchased compared to the Products as labeled and advertised.

151. On or about February 20, 2020, Plaintiff sent a CLRA notice letter to Defendant Tropicana which complies with California Civil Code § 1782(a). Plaintiff sent Tropicana, individually and on behalf of the proposed Class, a letter via Certified Mail,

advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

**WHEREFORE**, Plaintiff prays judgment as follows:

A. An award of punitive damages in an amount to be proven at trial;

B. An order enjoining Defendants' deceptive and unfair practices;

C. An order requiring Defendants to conduct corrective advertising;

D. An award of pre-judgment and post-judgment interest;

E. An award of attorney fees and costs;

F. Monetary damages, including, but not limited to any compensation, incidental, or consequential damages in an amount to be determined at trial; and

G. Such other and further relief as this Court may deem just, equitable, or proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.

Dated: July 26, 2023

*Bruce Hadley*
BRUCE HADLEY
In Pro Per

*Curtis Randolph*
CURTIS RANDOLPH
In Pro Per